RECEIVED
IN ALEXANDRIA, LA
SEP 21 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **BRIAN WILLIAMS** | **DOCKET NO. 09-CV-0458; SEC. P** |
| **VERSUS** | **JUDGE DEE D. DRELL** |
| **SCOTT FRANKLIN, ET AL.** | **MAGISTRATE JUDGE JAMES D. KIRK** |

## REPORT AND RECOMMENDATION
## TO DISMISS CERTAIN DEFENDANTS

Before the Court is a civil rights complaint filed by pro se plaintiff Brian Williams, pursuant to 42 U.S.C. §1983, on March 23, 2009. Based on his notice of change of address filed on August 28, 2009, it appears that Plaintiff is no longer in the custody of the Louisiana Department of Safety and Corrections. At the time of filing suit, he was incarcerated at the David Wade Correctional Center in Homer, Louisiana. However, Plaintiff complains of constitutional violations that allegedly took place at, and in transport to, the Lasalle Correctional Center in Urania, Louisiana. Plaintiff names as defendants Sheriff Scott Franklin, Warden Leroy Holiday, Warden Jeff Windam, Major David Smith, Assistant Warden Lamar Johnson, Lieutenant Passmen, Lieutenant Bucklew, Lieutenant Jeff Doe, Sergeant Parker, Deputy Patrick Smith, Deputy Self, Deputy John Doe, Nurse Rainey, Nurse Book, unknown Lasalle Correctional Center employees, unknown Lasalle Management Company Employees, the Lasalle Parish Sheriff's Office, The Lasalle Parish Police Jury, Lasalle Correctional Center, Lasalle Management

Company, Lasalle Parish, and unknown employees of the Lasalle Parish Sheriff's Office.

This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

**Factual Allegations**

Plaintiff claims that on April 17, 2008, he was picked up from East Baton Rouge Parish Prison by LaSalle Correctional Center officers, Lt. Bucklew and Deputy John Doe after apparently escaping from work release. From the moment Plaintiff was picked up by the officers, they began to threaten him and make racially derogatory comments about him. During the drive back to Urania, Louisiana, the officers made a stop on Hwy 61, and Plaintiff was "yanked out of the van with restraints on my hands and legs, so [he] went face first into the dirt." [Doc. #1, p.10] When Plaintiff got up, he was punched in the chest, stomach, and ribs repeatedly by both officers, was spit on several times, and was told that he was a "stupid nigger" and "you won't escape again will you boy?" [Doc. #1, p.11] The officers told Plaintiff "that was for Major Smith."

Plaintiff alleges that when he and the officer reached the LaSalle Parish Courthouse, they saw Major Smith who asked the officers if they had "handled" Plaintiff for him. [Doc. #1, p.12] Plaintiff was booked for simple escape and taken back to LaSalle Correctional and placed on 24 hour "lockdown." Plaintiff alleges

that he was not given food, sheets, blanket, or hygiene items, and he was left in restraints for several hours in the locked cell without ventilation or running water. [Doc. #1, p.12]

On April 18, 2008, Plaintiff was taken out of the cell and placed in hand and leg restraints and was escorted to Chief of Security Major David Smith's office. Leroy Holiday and Lamar Johnson were present along with Captain Davidson and Major David Smith. Plaintiff alleges that he was forced to give a statement and was then teased and ridiculed by the men. Leroy Holiday threatened to "beat the life out of [Plaintiff]" and then started punching and kicking Plaintiff, knocking Plaintiff to the floor. He continued to kick and punch Plaintiff, and then told Plaintiff to leave.

Plaintiff was escorted back to his cell where he was met again by Leroy Holiday and Holiday's son, who happened to be an inmate at the same facility. Plaintiff was uncuffed and told to remove his clothing. After Plaintiff's clothing was removed, his hands and legs were cuffed again, and he was beat by Holiday and his son. Plaintiff alleges that he was punched in the chest, mouth, shoulder, and ribs by the men, causing his shoulder to become dislocated. [Doc. #1, p.13] Plaintiff asked an unknown officer and a nurse to get him medical care for the dislocated shoulder, but he was refused. After several hours, Plaintiff was finally able to get his shoulder back into place.

Later that evening, Plaintiff was taken out of the cell and placed in hand and leg restraints and brought to the shower room. Plaintiff was met there by two inmates, one of whom was the son of Leroy Holiday. The inmates beat Plaintiff and left him on the floor. [Doc. #1, p.14] When Plaintiff emerged from the room, he was met by Sgt. Parker and a lieutenant who laughed at him and said that Plaintiff was getting the "royal" treatment because he had escaped. Plaintiff was brought back to his cell and left in restraints for several hours. He spent another night without sheets, blankets, hygiene items, or running water.

Plaintiff claims that on the mornings of April 19 and 20, 2008, he was given only bread, jelly, and a cup of water for breakfast. [Doc. #1, p.14]

On April 21, 2008, Plaintiff was restrained by the hands and legs at 5:45 a.m. and brought to the library by Officer Self. Plaintiff was met there by Officer Patrick Smith and Lt. Passmen, who asked Plaintiff if he had a problem with authority. Plaintiff responded, "No," and Passmen punched Plaintiff knocking him to the ground. Passmen continued to kick Plaintiff in the stomach, shoulder, and legs while Plaintiff was on the ground in restraints. Officer Smith kicked Plaintiff in the shoulder area, causing Plaintiff's shoulder to dislocate again. Plaintiff alleges that the beating lasted between fifteen and twenty minutes. Plaintiff was brought back to his cell, and his restraints were removed.

After several hours with no medical attention, Plaintiff was able to "push [his] shoulder back into place." [Doc. #1, p.14]

On Tuesday, April 22, 2008, Plaintiff asked Officer Self to let him speak with the warden. Self said that the warden did not want to speak with Plaintiff. Plaintiff kicked the door, and Officer Smith and Lt. Passmen opened the door and sprayed Plaintiff with a chemical agent. Plaintiff was not given any food that evening. [Doc. #1, p.15]

On Wednesday April 23, 2008, Plaintiff asked Lt. Gaines if he could shower and call a lawyer. Gains allowed Plaintiff to shower, but Plaintiff was told he could only call his mother and wife, not a lawyer. Plaintiff was afraid to tell his family what was happening to him because there were four guards who could hear his conversation. [Doc. #1, p.15]

On Thursday April 24, 2008, Officers Smith and Lt. Passmen were not working, and Plaintiff was allowed to shower. He requested a meeting with the warden, but was told the warden was not in and did not want to see him. [Doc. #1, p.15]

On Friday April 25, 2008, Officer Smith and Lt. Passmen entered Plaintiff's cell stating that they were back for three days and were going to "finish what they had started." [Doc. #1, p.15] Officer Patrick Smith slapped Plaintiff, and Officer Self spit in Plaintiff's face. Plaintiff was denied a lunch tray.

On Saturday April 26, 2008, Plaintiff was given a cup of water

5

for breakfast. Later in the day, he asked officers Smith and Passmen for a shower. The officers returned to Plaintiff's cell a short time later with a hose, cuffed Plaintiff's hands and legs, and sprayed Plaintiff down with the hose. [Doc. #1, p.16]

On Sunday April 27, 2008, in the early morning hours while the lights were off in Plaintiff's cell, two men entered and beat Plaintiff with a hard unidentified object. [Doc. #1, p.16]

Lt. Gaines allowed Plaintiff to shower on April 28 and 29; Passmen and Smith were not working on those days. [Doc. #1, p.16]

On April 30, 2008, Plaintiff called his wife, but could not speak freely because three guards were standing over him. When Plaintiff returned to his cell, Passmen and Smith were there, and all of Plaintiff's property had been hosed down and thrown on the floor. [Doc. #1, p.17]

At 5:30 a.m. on May 1, 2008, Plaintiff was taken out of his cell and placed in hand and foot restraints. He was walked to a utility closet by Officers Smith and Passmen. Plaintiff was hosed down and beat up. When he wiped the water from his eyes, he saw Warden Windam and Major Smith walking out of the closet. Plaintiff had been kicked and punched in the face and chest area, and his shoulder was dislocated again. Plaintiff alleges that Passmen and Smith stood by and watched the attack. [Doc. #1, p.17]

On Friday May 2, 2008, Plaintiff was deprived of breakfast. He was awakened by Officer Patrick Smith stating, "You are going to

6

get it today boy!" A few hours later, the cell opened and Plaintiff was placed in hand and leg restraints and walked to the utility closet where he was beaten again. [Doc. #1, p.17] He was hit in the head with an unidentified object, was kicked in the legs and punched in the face by Patrick Smith and Lt. Passmen.

On May 3, 2008, Lt. Gains allowed Plaintiff to make a phone call. As Plaintiff was being walked back to his cell by Officer Johnson, he was attacked by Inmate Marlon Harwell. The inmate cut Plaintiff with a razor on his arms, and Plaintiff was unable to defend himself due to his hand and leg restraints. Officer Johnson did nothing to protect Plaintiff. Plaintiff was placed back in his cell without medical treatment.

May 4 and 5 were relatively uneventful, and Plaintiff was transferred to Forcht Wade Correctional Center on May 6, 2008. [Doc. #1, p.18]

### Legal Claims

Plaintiff alleges that the defendants violated his constitutional rights guaranteed by the 8th amendment in that he was subjected to cruel and unusual punishment and inhumane conditions of confinement. He claims that the guards abused him and failed to protect him from abuse.

Plaintiff names the Lasalle Parish Police Jury as a defendant, but he does not allege any connection between the police jury and the incidents complained of in this case. A Louisiana police jury

is charged only with the responsibility of providing a good and sufficient jail and with responsibility for the physical maintenance of parish jails and prisons. The administration of the jails is the province of the sheriff, not the police jury. See O'Quinn v. Manuel, 773 F.2d 605 (5th Cir. 1985). Given the limited scope of the police jury's duties, Plaintiff's complaint does not state a cause of against the LaSalle Parish Police Jury.

Plaintiff also names the LaSalle Parish Sheriff's Office as a defendant. However, it is well settled that a sheriff's department is not a legal entity capable of being sued. Valentine v. Bonneville Ins. Co., 691 So.2d 665, 668 (La. 1997)(citations omitted). "[T]he law of Louisiana affords no legal status to the Parish Sheriff's Department so that the department can sue or be sued, such status being reserved for the Sheriff." Id. See also George v. Wilson, 2000 WL 521450 (E.D.La. 4/28/00); Manieri v. Layirrison, 2001 WL 25657 (E.D.La. 1/9/01); Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dept., 350 So.2d 236 (La.App. 3 Cir. 1977). Plaintiff named Sheriff Franklin and the Sheriff's Office as defendants. His claim against the "sheriff's office" should be dismissed.

Plaintiff named the Parish of Lasalle, Lasalle Correctional Center, LLC, and Lasalle Management Company, LLC as defendants. To establish liability, Plaintiff must essentially meet the requirements of Monell v. New York City Dept. of Soc. Serv., 436

U.S. 658, 690 n.55 (1978). In <u>Monell</u>, the Court said that municipalities cannot be held liable for constitutional torts under §1983 on a respondeat superior theory, but they can be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Id.</u> at 691-4. In <u>Rosborough v. Mgmt. & Training Corp.</u>, 350 F.3d 459, 461 (5th Cir.2003), the Fifth Circuit extended municipal liability under §1983 to include private corporations and their employees. Thus, a Plaintiff seeking to impose liability on a municipality or prison management company under Section 1983 is required to identify a municipal policy or custom that caused the plaintiff's injury. See <u>Board of Cty. Comm'r of Bryan Cty. v. Brown</u>, 520 U.S. 397, 403-404 (1997).[1]

Plaintiff has not alleged nor presented any evidence of a formal or official policy by Lasalle Parish, LCC, or Lasalle Management; nor has he alleged and shown a longstanding custom and

---

[1] The official policy requirement can be met in a number of different ways. See <u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 471 (5th Cir. 1999)(citations omitted). There may be an actual policy contained in officially promulgated policy statements, ordinance, or regulations. See <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001); <u>Burge</u> 187 F.3d at 471. Or there may be "**a persistent widespread practice** of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." <u>Lawson v. Dallas County</u>, 286 F.3d 257, 263 (5th Cir. 2002)(citations omitted). This may include a municipal custom of which the policymaker has knowledge and to which he acquiesces. See <u>Quatroy v. Jefferson Parish Sheriff's Office</u>, 2009 WL 1380196 (E.D.La. 5/14/09)(citing <u>McNabola v. Chicago Transit Auth.</u>, 10 F.3d 501, 511 (7th Cir. 1993). If a policymaker's failure to take some action evidences a "deliberate indifference" to constitutional rights, this inaction can fulfill the "official policy" requirement. See <u>Burge</u>, 187 F.3d at 471.

practice of excessive force by officers in transporting or housing inmates or depriving an inmates with medical care that was adopted or maintained by the policymakers with deliberate indifference to its known or obvious consequences. Plaintiff has not pled a pattern of similar violations or incidents that would suggest that a policy has been adopted and maintained with deliberate indifference to constitutional rights. See Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003). Plaintiff fails to state facts indicating that any parish or LCC policy regarding medical care or excessive force or a failure-to-train or supervise was the moving force behind the alleged violations. See Fraire v. City of Arlington, 957 F.2d 1268, 1281 (5th Cir. 1992)(noting that "a direct causal connection must exist between the policy and the alleged constitutional deprivation"). Rather, in this case, it appears that the "moving force" behind the alleged deprivations may have been Plaintiff's prior escape from LCC.

Finally, Plaintiff claims that Sheriff Scott Franklin[2] knew that Plaintiff's rights were being violated by the defendants, but he does not provide any facts in support of that conclusion. A civil rights plaintiff must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. Schultea v. Wood, 47 F.3d 1427, 1433

---

[2] A suit against a government officer "in his official capacity" is the same as a suit against the government entity of which he is an agent. See Burge v. Parish of St. Tammany, 187 F.3d 452, 468 (5th Cir. 1999).

10

(5th Cir. 1995).

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's claims *against only the following defendants* be **DISMISSED WITH PREJUDICE as failing to state a claim for which relief can be granted** under 28 U.S.C. §1915(e)(2)(b):

   The Lasalle Parish Sheriff's Office,
   The Lasalle Parish Police Jury,
   The Lasalle Parish Correctional Center,
   The Lasalle Management Company,
   The Parish of Lasalle, and
   Sheriff Scott Franklin.

Service of process will be ordered on the other defendants, except for the "Unknown" defendants. Plaintiff should identify those individuals or dismiss them. Otherwise, the Court will dismiss the unknown defendants without prejudice.

**Under the provisions of 28 U.S.C. §636(b)(1)(c) and Federal Rule of Civil Procedure 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.**

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this**

Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Federal Rule of Civil Procedure 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglas v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana, this 21st day of September, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE